| **Inkmango, Inc. v Warren** |
|:---:|
| 2024 NY Slip Op 33969(U) |
| November 8, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 152802/2024 |
| Judge: Paul A. Goetz |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. PAUL A. GOETZ**     PART     47

*Justice*

-------------------------------------------------------------------------X

INKMANGO, INC.,

     Plaintiff,

- v -

KATIE WARREN, BUSINESS INSIDER

     Defendants.

-------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 152802/2024 |
| MOTION DATE | 06/18/2024 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24

were read on this motion to/for      DISMISSAL      .

In this libel action, defendants move pursuant to CPLR § 3211 to dismiss the complaint, arguing that the plaintiff has failed to meet the heightened pleading standard of a libel claim under New York's anti-SLAPP statute. They additionally argue that under the anti-SLAPP statute they are entitled to reasonable attorney's fees as the action was brought without a substantial basis in fact and law.

## BACKGROUND

Plaintiff, InkMango Inc., d/b/a the Juggernaut, is a media corporation with a focus on South Asian news stories (NYSCEF Doc No 1 ¶ 1). Defendant, Katie Warren, wrote and defendant, Business Insider ("BI") published an article on March 5, 2024 titled "*The Juggernaut promised to revolutionize South Asian news. But insiders say the company's founder misled investors, struggled to raise money, and left workers 'heartbroken*" (the "Article") (NYSCEF Doc No 3). The Article reported on the business decisions of the Juggernaut and its CEO, Snighda Sur (*id.*). Plaintiff alleges that in the Article, defendants made misrepresentations about its funding and investment activities by implying it misled investors (NYSCEF Doc No 1 ¶ 10).

[* 1]

Plaintiff's two causes of action against defendants, are for defamation, and defamation *per se* based upon the allegedly defamatory statement, "Part of the issue, former colleagues said, was that Sur didn't always pitch smartly (or honestly). The deck[1] Sur presented to investors touted stats like The Juggernaut's Instagram followers but lacked some critical information about the company's finances." (*id* at 77; NYSCEF Doc No 3).

**DISCUSSION**

Defendants argue that the case must be dismissed because plaintiff has failed to meet the heightened pleading standards imposed by New York's ant-SLAPP statute. They further argue that plaintiff's complaint also does not satisfy the general pleading requirements of CPLR § 3211(a)(7). Specifically, they argue that the allegedly defamatory statements are non-actionable opinions, that are supported by disclosed, undisputed facts, and that plaintiff has failed to allege and cannot prove actual malice.

Plaintiff argues that the anti-SLAPP law does not apply because the allegedly defamatory statements in the article are not matters of public interest. Further, it argues that even if the anti-SLAPP law does apply, it has sufficiently plead causes of action for defamation arguing that the allegedly defamatory statements were not pure opinion, and that defendants knew at the time of publication, that the statements were false, thus satisfying the requirement that plaintiff pleads actual malice.

*Anti-SLAPP / Failure to State a Cause of Action*

CPLR § 3211(g) states:

> A motion to dismiss based on [CPLR § 3211(a)(7)], in which the moving party has demonstrated that the action, claim, cross claim or counterclaim subject to the motion is an action involving public petition and participation as defined in [Civil Rights Law § 76-a],

---

[1] While the parties do not define "deck" in this context it apparently refers to the materials shown to potential investors.

shall be granted unless the party responding to the motion demonstrates that the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law. The court shall grant preference in the hearing of such motion.

"[T]he 'substantial basis' standard applicable under CPLR 3211(g) is more exacting than the liberal pleading standard applicable to ordinary CPLR 3211(a)(7) motions" (*Reeves v Associated Newspapers, Ltd.*, 218 NYS3d 19, 30 [1st Dept 2024]). When reviewing a "motion to dismiss for failure to state a cause of action pursuant to CPLR 3211(a)(7), [courts] must accept the facts as alleged in the complaint as true, accord the plaintiff the benefit of every reasonable inference, and determine only whether the facts, as alleged fit within any cognizable legal theory" (*Bangladesh Bank v Rizal Commercial Banking Corp.*, 226 AD3d 60, 85-86 [1st Dept 2024] [internal quotations omitted]). "By contrast, a court reviewing the sufficiency of a pleading under CPLR 3211(g) must look beyond the face of the pleadings to determine whether the claim alleged is supported by substantial evidence" (*Reeves*, 218 NYS3d at 30).

Defendants "moving for dismissal [under CPLR 3211(g)] need not establish a dispositive procedural or substantive defense on the merits of the action, as otherwise required under other provisions of CPLR 3211, but rather, need only establish that the true nature of the action is one within the scope of anti-SLAPP" (*VIP Pet Grooming Studio, Inc. v Sproule*, 224 AD3d 78, 83 [2d Dept 2024]). "The actual burden of proof as to the action's meritoriousness is thereupon shifted in the context of anti-SLAPP immediately to the plaintiff" (*id.*).

Further Civil Rights Law § 76-a states:

> In an action involving public petition and participation, damages may only be recovered if the plaintiff, in addition to all other necessary elements, shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of

[* 3]

whether it was false, where the truth or falsity of such communication is material to the cause of action at issue.

Whether the heightened pleading standard applies is dependent on whether the claim "is an action involving public petition and participation as defined in [Civil Rights Law § 76-a]" (CPLR § 3212[g]). Civil Rights Law § 76-a defines "an action involving public petition and participation" as "any communication in a place open to the public or a public forum in connection with an issue of public interest." It goes on to state "'Public interest' shall be construed broadly, and shall mean any subject other than a purely private matter" (Civil Rights Law § 76-a[d]). "In order to fulfill the anti-SLAPP law's stated purpose of protecting public petition and participation, the 2020 amendments provide that 'public interest' shall be broadly construed to embrace matters of political, social, or other concern to the community" (*Reeves* 218 NYS3d at 27 [internal quotation marks omitted]).

Defendants argue that the suit is subject to the heightened pleading standards of CPLR § 3211(g) because the reporting of the fundraising and business practices of a company is a public concern. Plaintiff argues that the issues discussed in the article are private issues between a private company and its investors and is outside the scope of public interest.

"Statements falling into the realm of mere gossip and prurient interest are not matters of public concern" (*Aristocrat Plastic Surgery, P.C. v Silva*, 206 AD3d 26, 30 [1st Dept 2022]). However, here the reporting of insider information at a company offering services to the public which courts investors is not in the "realm of mere gossip" (*id*.). Indeed, in news articles "addressing real estate transactions and issues of fraud and deceptive practices that could affect the public … fall within the expanded definition of public interest" (*Golan v Daily News, L.P.*, 77 Misc 3d 258, 263 [Sup Ct 2022], affd, 214 AD3d 558 [1st Dept 2023]). Here, the business and fundraising practices of plaintiff are well within the scope of public concern and

152802/2024   INKMANGO, INC. vs. WARREN, KATIE ET AL
Page 4 of 11
Motion No. 001

4 of 11

[* 4]

accordingly, the anti-SLAPP statute and heightened pleading standard apply. Additionally, plaintiff needs to "establish[] by clear and convincing evidence that [the allegedly defamatory statements were] made with knowledge of [their] falsity or with reckless disregard of whether [they were] false" (Civil Rights Law § 76-a).

*Basis for the Defamation Claims*

Ordinarily, "[t]he elements [of a defamation claim] are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se" (*Frechtman v Gutterman*, 115 AD3d 102, 104 [1st Dept 2014]). "A statement is defamatory on its face when it suggests improper performance of one's professional duties or unprofessional conduct" (*id.*). However, where as here the anti-SLAPP statute applies, "the plaintiff bears the burden of establishing by clear and convincing evidence that defamatory false statements were made with [*actual malice*, that is] knowledge of their falsity or with reckless disregard to whether the statements were true or false" (*Singh v Sukhram*, 56 AD3d 187, 194 [2d Dept 2008]).

    a. *Non Actionable Opinion*

Defendants argue that the allegedly defamatory statement is non-actionable opinion and thus, incapable of being proven false which would require dismissal of the defamation claims. "[O]nly statements of fact can be defamatory because statements of pure opinion cannot be proven untrue" (*Martin v Daily News L.P.*, 121 AD3d 90, 100 [1st Dept 2014]). "Distinguishing between fact and opinion is a question of law for the courts, to be decided based on what the average person hearing or reading the communication would take it to mean" (*Davis v Boeheim*, 24 NY3d 262, 269 [2014]). There are two forms of pure opinion. "It may be a statement of

152802/2024 INKMANGO, INC. vs. WARREN, KATIE ET AL
Motion No. 001

Page 5 of 11

opinion which is accompanied by a recitation of the facts upon which it is based, or it may be [a]n opinion not accompanied by such a factual recitation so long as it does not imply that it is based upon undisclosed facts" (*id*.). "[A]n opinion that implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, ... is a 'mixed opinion' and is actionable" (*id*.).

To determine whether a statement is pure opinion the following factors must be considered:

> (1) whether the specific language in issue has a precise meaning which is readily understood;
>
> (2) whether the statements are capable of being proven true or false; and
>
> (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal ... readers or listeners that what is being read or heard is likely to be opinion, not fact

(*Mann v Abel*, 10 NY3d 271, 276 [2008]).

"The third factor lends both depth and difficulty to the analysis, and requires that the court consider the content of the communication as a whole, its tone and apparent purpose" (*Davis*, 24 NY3d at 270 [internal quotation marks omitted]).

Here, the statements challenged by plaintiff are, "Part of the issue, former colleagues said, was that Sur didn't always pitch smartly (or honestly). The deck Sur presented to investors touted stats like The Juggernaut's Instagram followers but lacked some critical information about the company's finances" (NYSCEF Doc No 3). Plaintiff argues that by stating that Sur did not pitch honestly, they are implying to their readers that they know facts which justify the opinion but are unknown to those reading it. However, within the article defendants provide facts upon which this opinion is based are undisputed by plaintiff. The article states: "Multiple people told

152802/2024   INKMANGO, INC. vs. WARREN, KATIE ET AL
Motion No. 001

Page 6 of 11

BI that they witnessed Sur misrepresent aspects of The Juggernaut's business to potential hires and investors, including falsely claiming that Oprah Winfrey had invested in the publication" (*id.*).

Plaintiff does not dispute in its complaint, nor does Sur dispute in an affidavit submitted in opposition to this motion, that the underlying fact is false (NYSCEF Doc No 1; NYSCEF Doc No 22). Additionally, plaintiff submitted with the Complaint a fact check sent to Sur in which she was asked and responded as follows:

> Q: Several people said that you told employees, investors, and potential hires that Oprah Winfrey had invested in The Juggernaut. But a spokesperson for Winfrey told BI that Winfrey has zero affiliation with The Juggernaut. You also told people that either Gayle King or King's son had invested in the company. A partner at Concrete Rose, the venture capital firm where King's son, William Bumpus Jr., is a partner, said the firm never invested in The Juggernaut.
>
> A: Will Bumpus is an investor of The Juggernaut through a vehicle that is not Concrete Rose.

(NYSCEF Doc No 4).

The statement that "Sur didn't always pitch … honestly" is a statement of pure opinion based on facts plaintiff has not disputed. When this statement is viewed within the context of the article, readers would likely believe that the statement is an opinion based upon the undisputed facts contained the article (*Mann*, 10 NY3d at 276). Since plaintiff fails to dispute the underlying facts and "appears to seek every possible route around the essential fact that [it] does not claim that [defendants'] statements were false, it has failed to state a claim for defamation" (*Cabello-Rondon v Dow Jones & Co., Inc.*, 45 Media L Rep 2746 [SDNY Aug. 16, 2017], affd, 720 Fed Appx 87 [2d Cir 2018]).

Plaintiff also takes issue with the portion of the statement which says the "deck Sur presented to investors … lacked some critical information about the company's finances"

**152802/2024 INKMANGO, INC. vs. WARREN, KATIE ET AL**          **Page 7 of 11**
**Motion No. 001**

7 of 11

[* 7]

(NYSCEF Doc No 3). Like the prior statement, when this statement is viewed within the context of the article, readers would likely believe that the statement is an opinion based upon the undisputed facts contained the article (*Mann*, 10 NY3d at 276). Certain financial information may be considered "critical" to one person, and not to another, so this statement is not "capable of being proven true or false" (*Mann*, 10 NY3d at 276). Further, plaintiff admits in its opposition that the original decks provided were "standard, general, introductory decks, once an investor confirmed interest, The Juggernaut shared more detailed information upon request" (NYSCEF Doc No 21). While plaintiff may disagree with defendants' assessment that their original decks lacked "critical" information, this is a matter of opinion and is non-actionable. Therefore, neither of the two statements discussed are actionable.

b. *Actual Malice*

Defendants also argue that the complaint has not adequately plead actual malice, a requirement since this suit is subject to the heightened pleading standards of the anti-SLAPP statute. Plaintiff argues that it has pled that defendants knew that at the time of publication the statements were untrue or recklessly disregarded whether they were true.

Since the anti-SLAPP statute applies, the "burden of proof as to the action's meritoriousness [shifts] immediately to the plaintiff" (*VIP Pet Grooming*, 224 AD3d at 83). "Actual malice is measured by what defendant actually believed and not by whether reasonably prudent man would have published, or would have investigated before publishing" (*Goldblatt v Seaman*, 225 AD2d 585 [2d Dept 1996]). "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication" (*St. Amant v Thompson*, 390 US 727, 731, [1968]). "[A]ctual malice standard is not satisfied merely through a showing of ill will or "malice" in the ordinary sense of the term" (*Harte-Hanks*

*Communications, Inc. v Connaughton*, 491 US 657, 666 [1989]). "Nor can the fact that [a] defendant published the defamatory material in order to increase its profits suffice to prove actual malice" (*id*. at 667). However, "[e]vidence of ill will combined with other circumstantial evidence indicating that the defendant acted with reckless disregard of the truth or falsity of a defamatory statement may also support a finding of actual malice" (*Celle v Filipino Reporter Enterprises Inc.*, 209 F3d 163, 183 [2d Cir 2000]). "Although failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category (*Harte-Hanks* at 692).

Here, plaintiff alleges that the primary source of the article was a former disgruntled employee of plaintiff and a personal friend of defendant Warren. Plaintiff also argues that defendant did not choose to seek further information from sources provided to defendant by plaintiff. However, plaintiff has "failed to allege facts sufficient to show actual malice with convincing clarity" (*Jimenez v United Fedn. of Teachers*, 239 AD2d 265, 266 [1st Dept 1997]).

Defendant Warren avers that she spoke to more than thirty sources when writing the article (some of which were provided by Ms. Sur), including former employees and current investors (NYSCEF Doc No 15 ¶ 6). In fact, the article includes a positive quote from one investor who said that "employee turnover [at Juggernaut] was on par with other companies in his firm's portfolio" (NYSCEF Doc No 3). Additionally, defendant Warren affirms that she reached out to Ms. Sur multiple times for an interview and when she declined, she requested comments from Ms. Sur via email on the article which were incorporated into the article and attributed to "a spokesperson for The Juggernaut" (NYSCEF Doc No 15 at ¶ 8 – 14). Therefore, plaintiff has failed to allege by clear and convincing evidence that defendants knowingly lied or purposefully avoided the truth. Therefore, plaintiff has failed to allege actual malice.

152802/2024   INKMANGO, INC. vs. WARREN, KATIE ET AL
Motion No.  001

Page 9 of 11

9 of 11

Accordingly, because neither of the statements pled in the complaint are actionable and because plaintiff has failed to allege actual malice, it complaint will be dismissed.

*Attorney's Fees*

Civil Rights Law § 70-a(1)(a) states "costs and attorney's fees shall be recovered upon a demonstration, … that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law." Having found that plaintiff's action involves a public petition, and that the plaintiff has failed to establish that its defamation claims have a substantial basis in fact or law, defendants are entitled to reasonable attorney's fees associated with defending this action.

Based on the foregoing, it is,

ORDERED that defendants' motion to dismiss the complaint is granted and the complaint is dismissed in its entirety, with costs and disbursements to defendants as taxed by the Clerk of the Court, and the Clerk is directed to enter judgment accordingly in favor of said defendants; and it is further

ORDERED that pursuant to Civil Rights Law § 70-a(1)(a) defendants are entitled to their reasonable attorney's fees associated with this action; and it is further

ORDERED that defendants shall submit an affirmation in support of their request for reasonable attorneys' fees within 20 days of entry of this order via NYSCEF and via e-mail to SFC-Part47-Clerk@nycourts.gov ; and it is further

152802/2024   INKMANGO, INC. vs. WARREN, KATIE ET AL
Motion No. 001

Page 10 of 11

ORDERED that any opposition to the request shall be submitted within 10 days thereafter.

20241108120620PG0ETZ1B6069EB6476042369047BF8093786E2A8

| 11/8/2024 | | | PAUL A. GOETZ, J.S.C. |
|---|---|---|---|
| DATE | | | |

CHECK ONE: [X] CASE DISPOSED     [ ] NON-FINAL DISPOSITION

[X] GRANTED    [ ] DENIED    [ ] GRANTED IN PART    [ ] OTHER

APPLICATION: [ ] SETTLE ORDER     [ ] SUBMIT ORDER

CHECK IF APPROPRIATE: [ ] INCLUDES TRANSFER/REASSIGN     [ ] FIDUCIARY APPOINTMENT     [ ] REFERENCE

152802/2024   INKMANGO, INC. vs. WARREN, KATIE ET AL      Page 11 of 11
Motion No.  001

11 of 11